Connie E. SMITH, Appellant and Cross–Appellee (Plaintiff Below),

v.

SYD'S, INC., and Appellee (Defendant Below),

Jan Deering d/b/a Deering Cleaners, Appellee and Cross–Appellant (Defendant Below).

No. 06A04–8910–CV–459.

Indiana Court of Appeals, Fourth District.

April 22, 1991.

Rehearings Denied July 5 and July 18, 1991.

Frank E. Spencer, Indianapolis, for appellant and cross-appellee.

Robert A. Smith, Michael P. Bishop, Bishop Smith & Bishop, Stephen L. Bola,

Hill Fulwider McDowell Funk & Matthews, Indianapolis, for appellee.

CHEZEM, Judge.

### Case Summary

Plaintiff–Appellant, Connie E. Smith, appeals from the denial of her "Motion for Additur, or in the Alternative, for New Trial on the Issue of Damages" ("Motion"). We reverse and remand.

### Issues

Smith presents three (3) issues for our review. However, because we reverse and remand, we address only the following:

I. Were the damages inadequate as a matter of law, so that the trial court erred in denying the Motion.

II. Did the trial court err in withdrawing from evidence certain medical expenses of Smith.

In addition, Deering raises four (4) issues by cross-appeal, which we consolidate and restate as follows:

Was Smith an implied invitee as to Deering, so that the trial court properly denied Deering's Motion for Summary Judgment and Motion for Judgment on the Evidence.

### Facts and Procedural History

Smith was injured when she fell down a flight of stairs which was between two buildings located in Noblesville, Indiana. This incident happened at approximately 1:30 a.m. on February 24, 1987.

At the time, Smith was in the hallway when she heard the door at the bottom of the staircase open and close. As she stepped over to see who had come in, her right foot caught on an old piece of "remnant" carpet at the top of the staircase. Smith tripped over the carpet, lost her balance, and fell down the stairs.

One of the buildings in question is owned by Syd's, Inc. The business on the first floor is "Syd's Bar." On the second floor are three apartments, one of which was occupied at the time by Smith.

The other building is owned by Phillip Jan Deering. On the first floor is a business known as "Deering Cleaners." There is one apartment on the second floor of this building.

The staircase in question provides access to the apartments in *both* buildings. With respect to ownership, Deering's counsel stated at trial:

> There is absolutely no dispute in this case. There never has been from day one that Jan Deering owned some of that staircase. I would imagine—and I don't want to speak for Syd's—but there's been no dispute in this case from day one that Syd's owned part of the staircase. Neither one of them know how much. They both testified to that.

Prior to her fall, Smith lived in the second floor apartment for approximately twelve years, and was an employee of Syd's Bar. There, she waited on tables, cooked food, tended bar, performed janitorial work, and kept the business' books. On occasion, Smith would sweep and mop the second floor hallway, keep the lights on and operating in that hallway, and respond to tenant complaints.

On July 21, 1987, Smith filed her Complaint for Damages, which alleged that the defendants were negligent because: (1) the hallway was "improperly lit"; (2) the hallway was "improperly maintained"; and (3) there were obstacles in the hallway, such as "worn carpet."

At the conclusion of trial, the jury returned a verdict for Smith, and determined the total amount of damages she was entitled to recover, without regard to fault, was $75,000.00. The jury then apportioned fault as follows: (1) Smith—50%; (2) Syd's—40%; and (3) Deering—10%. Therefore, the trial court entered judgment against Syd's for $30,000.00, and against Deering for $7,500.00.

Other facts will be added as needed.

### Discussion

#### I

■ Smith first argues that the damages she was awarded were so small and inadequate that they "could not have been based upon the law and the evidence in the case,

and could only have been arrived at by the consideration of improper factors." Smith argues that the trial court should have granted her "Motion for Additur, or in the Alternative, for New Trial on the Issue of Damages." We disagree.

■ The trial court cannot properly vary the jury's award and enter judgment for a different amount unless it finds, as a matter of law, that the damages awarded were excessive or inadequate. *State v. Bircher* (1983), Ind.App., 446 N.E.2d 607, 610. In addition, "[w]here the evidence on damages is variable or conflicting, and the jury's award is within the range of the evidence, entry of judgment modifying the jury's award is an invasion of the jury's province and consequently erroneous." *Coffel v. Perry* (1983), Ind.App., 452 N.E.2d 1066, 1068.

The jury returned a verdict for Smith, and determined the total amount of damages she was entitled to recover, without regard to fault, was $75,000.00. However, the judgment was reduced to $37,500.00 because the jury determined that Smith was 50% at fault. Also, the evidence at trial indicated that the damages she incurred were at least $6,060.00. Under these circumstances, the trial court properly refused to grant additur. The damages were within the range of evidence at trial.

■ Moreover, even if the damages were inadequate, the trial court properly refused to grant a new trial limited to that issue. It is improper to grant a new trial as to damages where the issue of liability "is hotly contested and the evidence and inferences are conflicting and might have supported a verdict either for the plaintiff or the defendant." *State v. Tabler* (1978), 178 Ind.App. 31, 381 N.E.2d 502, 505, *trans. denied.* In other words, a new trial limited to damages is proper only when the evidence of liability is so clear that there is no issue on that point for a second jury to retry. *Id.; State v. Kallembach* (1983), Ind.App., 452 N.E.2d 1027, 1029.

In the present case, the issue of liability is *not* clear. This is evidenced by the fact that the jury apportioned 50% fault to Smith. Further, the facts at trial indicated

that Smith had prior knowledge of the obstacles in the hallway, as well as the alleged "improper lighting." Simply stated, the trial court did not err in refusing to grant a new trial limited to damages.

## II

Smith next argues the trial court erred in withdrawing the evidence of her medical expenses in excess of $6,060.00. We agree.

At trial, Smith's counsel introduced Plaintiff's Exhibit 9, which set forth Smith's medical expenses of $32,436.80. Defendants objected to the exhibit on the grounds that Smith had not presented medical testimony establishing that the expenses were "reasonable and necessary." But they had no objection to the extent Exhibit 9 was an accounting of the medical expenses incurred by Smith. The trial court then admitted the exhibit into evidence "just as a summary of her testimony on what she was charged." Smith later provided more detailed testimony about her injuries and the costs of treatment.

Near the end of trial, Defendants moved to have Exhibit 9 withdrawn from evidence, as follows:

> Your Honor, we would move that Plaintiff's exhibit nine, at this time, be withdrawn from evidence. And that's an exhibit that shows the medical totaling $32,436.80. It was tendered in [sic] the basis that the witness said she had incurred these expenses, subject to offering reasonable and necessary evidence. The only evidence that came in was a [Dr.] Beghin's [sic] $6,060.00 amount. That is before the Jury. The rest there has been no evidence of reasonableness or necessity and we would ask therefore that this be withdrawn.

In ruling on this motion, the trial court stated:

> The law in Indiana requires medical expert medical [sic] testimony unreasonableness [sic], and I don't find in this case. [Y]ou do have Dr. Beghin's [sic] testimony in his deposition of the reasonableness, he was asked that about the $6,060.00, so I will have to sustain the

objection and Plaintiff's exhibit 9 at this time will be withdrawn.

■ The proper measure of damages for medical services is the reasonable and fair value of medical expenses necessarily incurred by the plaintiff. *Herrick v. Sayler* (N.D.Ind.1958), 160 F.Supp. 25, 29; *Kampo Transit, Inc. v. Powers* (1965), 138 Ind. App. 141, 211 N.E.2d 781, 793. The law has been discussed as follows:

> [T]he law of Indiana will allow a plaintiff in a personal injury action to recover neither the actual amount of medical bills charged to him nor the amount of medical bills paid by him, but rather, the reasonable and fair value of medical expenses necessarily incurred by him.

*Herrick*, 160 F.Supp. at 28. Therefore, the plaintiff may recover the reasonable value of the medical services rendered to him because of the injury, provided the services were necessary. 22 Am.Jur.2d *Damages* § 198; *Kenwood Tire Co. v. Speckman* (1931), 92 Ind.App. 419, 176 N.E. 29, 31.

The question here is whether Smith sufficiently established both prongs of the "reasonable and necessary" test with respect to the medical expenses set forth in Exhibit 9. If so, the jury should have been allowed to consider *all* of the medical expenses, or $32,436.80. Under these circumstances, the trial court's withdrawal of the exhibit from the jury's consideration in determining damages would be reversible error warranting a new trial.

In Indiana, the few cases which are instructive here include *Summers v. Tarney* (1890), 123 Ind. 560, 24 N.E. 678, *Brosnan v. Sweetser* (1891), 127 Ind. 1, 26 N.E. 555, *Herrick v. Sayler* (N.D.Ind.1958), 160 F.Supp. 25, and *Chemco Transport, Inc. v. Conn* (1987), Ind.App., 506 N.E.2d 1111, *modified*, Ind., 527 N.E.2d 179 (1988). Contrary to the assertions of Syd's and Deering, *none* of these cases state that expert medical testimony is required to satisfy the "reasonable and necessary" test. In addition, the trial court incorrectly stated the law on this matter in Indiana.

With respect to the "reasonable" prong, the Indiana cases indicate that it may be satisfied by: (1) showing the payment of medical bills; or (2) providing testimony of a treating physician. *Chemco*, 506 N.E.2d at 1115 (amount paid, as shown by medical bills, tends to prove the "reasonableness" component); *Summers*, 24 N.E. at 679 (presumption is that amount paid for medical services is reasonable and proper until the contrary appears); *Brosnan*, 26 N.E. at 557 (testimony of attending physician may establish the reasonable value of medical services provided to plaintiff).

With respect to the "necessary" prong, the cases cited by the parties do *not* indicate how it can be satisfied in Indiana. We find an instructive case to be *Wood v. Elzoheary* (1983), 11 Ohio App.3d 27, 462 N.E.2d 1243, 1245.

In *Wood*, plaintiff sought to recover damages for medical expenses incurred because of a car accident. However, "the [trial] court excluded plaintiffs' evidence about much of her claimed medical care, all claimed physical therapy, and the charges made for that treatment." 462 N.E.2d at 1244. The jury verdict was in favor of plaintiff, who then appealed on the issue of damages.

On appeal, the issue was whether plaintiff had sufficiently established that the medical expenses were "necessary" for the injuries sustained in the car accident. *Wood*, 462 N.E.2d at 1245. Defendant argued that the evidence was insufficient because the physician who prescribed the extended physical therapy for plaintiff did not testify. Also, "[n]o one asked the later treating physician who did testify whether [the previous physician's] care or the physical therapy was necessary for plaintiff's injuries." *Id.* In addressing this argument, the appellate court stated:

> [P]roof that described medical care was reasonably necessary for identified injuries may not require expert testimony when that treatment is a matter of common knowledge. The jury may sometimes decide whether specific care was justified for injuries caused by the liability event from evidence about the nature of the injuries and the nature of the care. [Citation omitted.]

*Id.* The appellate court then determined the evidence was sufficient to permit the jury to consider the disputed treatment and related medical bills, stating in part that "[the jury] should decide whether that evidence has significance or not." *Wood,* 462 N.E.2d at 1246. The evidence which the court considered to be sufficient included: (1) plaintiff's testimony that her neck and back injuries began with the car accident and continued to trial; (2) testimony of family members which described the change in plaintiff's physical condition immediately following the accident; and (3) testimony by one of plaintiff's treating physicians about the nature of her neck and back injuries. *Id.* The judgment was then reversed and the case remanded for a new trial.

■ In the present case, the evidence at trial was sufficient to satisfy the "reasonable and necessary" test.[1] Smith introduced the medical expenses as set forth in Exhibit 9, and testified that the bills had been paid. This is *prima facie* evidence which sufficiently satisfied the "reasonable" prong in the absence of contrary evidence by Syd's or Deering. Indeed, the defendants had the opportunity to challenge the reasonableness of such expenses with contrary evidence, but failed to do so. There is no evidence in the record challenging the reasonableness of the medical expenses.

■ Smith also sufficiently satisfied the "necessary" prong of the test. While only one of the treating physicians testified, there was no need for additional expert medical testimony because the treatments were matters of "common knowledge." At trial, Smith testified that her fall down the staircase resulted in severe injuries to her left ankle, back, hip, and ribs.[2] Smith also testified about the treatment she received for these injuries, which included several operations. The operation on her broken ankle occurred shortly after the accident.

As for her back operation, that was performed approximately one year later by Dr. Behgin. This operation fused the spine from the twelfth vertebra to the second lumbar vertebra to help relieve pain. In addition, Smith testified at trial that she was still in pain from her injuries, and that she still takes medication prescribed by Dr. Behgin.

We also note the testimony of Smith's mother, Helen Russell. At trial, Russell testified that Smith "was in good health" the day before the fall. She then described in detail the change in Smith's physical condition immediately after the accident, as follows:

Q: How often did you see her after she injured herself?

A: Every day and stayed with her all night.

Q: Okay. Would you describe for us about how she progressed after she came home from the hospital. How she got along. Give us a little synopsis of it. Can you, please.

A: Well, she couldn't get in and out of her bed. She could not give herself a bath. I had to do that. And I'd have to go up of [sic] the morning before I went to work and fix her breakfast. And she had a walker. And I went and got a basket and put [it] on the walker so that when she could get up, after about a week, she could carry a few things in that basket on that walker ... [S]he walked on her walker for a long time. And on crutches for a long time. And a back brace ...

\* \* \* \* \* \*

Q: Was there pain? Was she in pain?

A: She was in great pain, and still is.

The trial transcript also shows the testimony of Dr. Behgin, who performed the back operation on Smith. Dr. Behgin provided expert medical testimony about the

1. Our discussion focuses on the medical expenses withdrawn by the trial judge before jury deliberations—those in excess of $6,060.00. The jury was allowed to consider the $6,060.00 because Dr. Behgin testified that *his* medical expenses were "reasonable and necessary." We note that both Syd's and Deering concede that Smith sufficiently satisfied the test as to the $6,060.00.

2. An ambulance was called to take Smith to the hospital where her injuries could be treated.

nature of Smith's injuries and the treatment he rendered.

When all of this evidence is considered, we hold that it was sufficient to permit the jury's consideration of the total medical expenses as set forth in Plaintiff's Exhibit 9. Smith sufficiently satisfied both prongs of the "reasonable and necessary" test under the facts and circumstances of this case. The trial court committed reversible error in withdrawing from evidence the medical expenses in excess of $6,060.00.

### Cross–Appeal

■ Deering argues on cross-appeal that the trial court erred in denying his Motion for Summary Judgment and Motion for Judgment on the Evidence. Deering claims he could not be liable because Smith was a "licensee," and not an "invitee," as to Deering. We disagree.

The facts and circumstances of this case present a unique situation not previously addressed by an appellate court in Indiana. Smith fell down a staircase which is located between two buildings. One of the buildings is owned by Syd's, and the other is owned by Deering. The staircase is used by the tenants living on the second floor of both buildings. Smith was a tenant of Syd's. She had no relationship with Deering. Deering's deposition testimony indicates he had an agreement with Syd's regarding the staircase, as follows:

Q: Do you have some unwritten understanding between yourself and [Syd's] regarding the maintenance of the common areas?

A: Yes, sir.

Q: What is that written understanding?

A: Not written, oral.

Q: Strike that. What is the oral understanding?

A: When I bought the building, I went to Mr. Zeckel [of Syd's] and I asked him how he and my brother handled the maintenance of the stairwell. He said that his manager, who is Connie Smith, lived up there and took care of the stairwell or any lights that were out. If there was any added expense, he said she would bill him and let him know and he

would bill me. I also—and I don't know if this relates to it or not—went to Virginia Andrews who leases from me and I told her, "Any time you ever see any lights, anything that you need repaired, just contact me and I will be glad to do it."

\*  \*  \*  \*  \*  \*

Q: You talked about what fifty percent?

A: I said any of the maintenance that needed to be done, we'll go fifty/fifty on it.

■ The law is well-established that a person entering upon the land of another comes upon the land either as an invitee, licensee, or trespasser. *Barbre v. Indianapolis Water Company* (1980), Ind.App., 400 N.E.2d 1142, 1145. In addition, the status of the person on the land determines the duty that is owed by the landowner to him. *Stewart v. Stewart* (1987), Ind.App., 506 N.E.2d 1132, 1135. As this court has previously noted:

In order to determine the duty owed by a possessor of land to one entering upon his premises, it is necessary first to determine the entering person's status. A person entering upon the land of another comes on the land as an invitee, licensee or trespasser. An invitee is a person who enters at the express or implied invitation of the owner or occupant either for the mutual benefit of both parties or to transact business. Trespassers or licensees are those who enter the premises for their own convenience, curiosity or entertainment. [Citations omitted.]

*Kidd v. Davis* (1985), Ind.App., 485 N.E.2d 156, 158. We also note that a person's status on the land, along with the duty owed, is a matter of law for determination by the trial court, not the jury. *Indiana State Highway Commission v. Daily Express, Inc.* (1987), Ind.App., 503 N.E.2d 1237, 1239.

Based on the particular facts and circumstances of this case, Smith was an implied invitee as to Deering. Deering knew the common staircase was used by the tenants of both buildings. He also exercised a degree of control over the staircase, and

had an oral agreement to share expenses as to its maintenance with Syd's. The record clearly shows both of the owners used the common staircase to their mutual advantage. One case which supports our conclusion here is *Ferdinando v. Rosenthal* (1938), 169 Misc. 953, 8 N.Y.S.2d 399.

In *Ferdinando,* the plaintiff brought an action against two separate defendants for injuries sustained in a common courtyard located between the defendants' buildings. The courtyard was used by the tenants of both buildings to enter and exit the street. The plaintiff was a tenant of one of the defendants, and was injured on the portion of the courtyard on the premises of the other defendant. The latter defendant argued that he could not be liable because the plaintiff was a "mere licensee" as to him. The court disagreed. It held that the plaintiff was an "implied invitee" based on the facts and circumstances of the case. *Ferdinando,* 8 N.Y.S.2d at 401.

Based on the foregoing, we conclude that Smith was an implied invitee as to Deering, and that the trial court properly denied the Motion for Summary Judgment and Motion for Judgment on the Evidence.

Reversed and remanded for a new trial.

MILLER and SULLIVAN, JJ., concur.