**L.K.I. HOLDINGS, INC., Appellant–Defendant,**

v.

**Jason P. TYNER, Harold L. Tyner, Deborah P. Tyner, Sarah E. Tunney, Meredith M. Tunney, Melissa Sweeney, R. William Sweeney, Bonnie E. Sweeney, Appellees–Plaintiffs,**

**and Douglas W. Dickson and City of Indianapolis, Appellees–Defendants.**

No. 49A02–9410–CV–622.

Court of Appeals of Indiana.

Nov. 29, 1995.

Rehearing Denied Jan. 17, 1996.

Rick D. Meils, R. Michael Congleton, Meils Thompson Dietz & Congleton, Indianapolis, for Appellant.

F. Bradford Johnson, Sheeks, Ittenbach & Johnson, Indianapolis, for Appellees, Jason P. Tyner, Harold L. Tyner and Deborah P. Tyner.

Brian W. Welch, Brian K. Peters, McHale Cook & Welch, P.C., Indianapolis, for Appellee, City of Indianapolis.

## OPINION

FRIEDLANDER, Judge.

L.K.I. Holdings, Inc. challenges the trial court's denial of its motion for summary judgment. L.K.I. also contends the trial court erred when it granted a motion for summary judgment in favor of its co-defendant, the City of Indianapolis.

We affirm.

The facts most favorable to the nonmovants are that on February 28, 1992, Sarah Tunney was driving northbound on Brokenhurst Road in Indianapolis. The portion of Brokenhurst Road upon which Tunney was traveling is intersected by Fall Creek Road on the north and Fall Creek Parkway on the south and is approximately 300 feet long. L.K.I., an Indiana corporation, constructed and maintained this section of Brokenhurst Road in connection with its development of a residential neighborhood. On the date of the incident, Fall Creek Parkway was a preferential street to Brokenhurst Road. Brokenhurst had not been accepted by the City of Indianapolis as a right-of-way or as part of the public street system.

As Tunney passed through the Fall Creek Parkway intersection, she collided with Douglas Dickson, who had been traveling eastbound on Fall Creek Parkway. A dirt mound constructed by L.K.I. obstructed the view of vehicles eastbound on Fall Creek Parkway and northbound on Brokenhurst. There were no traffic control signs at the intersection. Jason Tyner, a passenger in the Tunney vehicle, was injured.

Two complaints were filed, the first on behalf of Tyner and the second on behalf of Melissa Sweeney, another of Tunney's passengers. Defendant L.K.I. and defendant City of Indianapolis each moved separately for summary judgment in the Tyner action. The Tyner and Sweeney actions were subsequently consolidated. The trial court denied L.K.I.'s motion for summary judgment and granted the City's motion for summary judgment. The relevant portions of the trial court's ruling state:

*"City of Indianapolis:*

Governmental entities generally have an obligation to the public to maintain public thoroughfares in a safe condition. The government also is given the obligation to place traffic control devices on public highways pursuant to the regulations in the Indiana Manual on Traffic Control Devices. However, neither of these obligations are applicable to private rights of way or property.

Plaintiffs direct the Court's attention to a 1976 Executive Order of then Mayor William Hudnut which gave the [C]ity authority to control roads which have not been accepted as "preferential." Does this order create a legal duty upon the City to place stop signs on private roads?

In the case before the Court, the City concedes by implication that the public policy of our fair city favors the placing of traffic control devices on private property when certain conditions are met. The duty owed by the City to the Plaintiffs, if any, is contained in the August 11, 1976 Executive Order No. 2, and not in the common law. What precisely did the City assume as its responsibility for placement of traffic control devices within private developments? The Order states:

. . . . .

1. The traffic engineer of the City, upon the earliest of the following conditions,

should submit to the Transportation Board his recommendations concerning traffic control devices in additions or subdivisions:

a. The streets are formally accepted by the Department of Transportation ("DOT").

b. Eighty-one percent (81%) of the lots in each such subdivision have been built upon, or three (3) years have expired, even though such streets have not been formally accepted by DOT.

c. The developer of such subdivision or addition has notified the DOT in writing that the subdivision or addition, or certain streets therein, have been opened up to the public, and the construction of streets and homes is such that traffic control devices are necessary.

The record designated to the Court shows that the street was not 'accepted' by DOT until after the accident. There is no indication that 81% of the lots were developed. The record shows that construction of the road in question was only nineteen (19) months prior to the accident. Finally, there is no reference to any request by LKI to have the city examine the property for the placement of traffic control devices. Therefore, a search for a statutory or gratuitous duty owed by the City to the Plaintiffs in the said Executive Order is fruitless. On this issue, as a matter of law, the City owes not [sic] duty to the Plaintiffs to have placed a traffic control device on the south side of this intersection. The Plaintiff's [sic] next contend that the City may be liable for its failure to enforce its ordinances regarding the mound of dirt. The Indiana Tort Claims Act expressly exempts the State and its political subdivision[s] from any liability for its failure to enforce its laws. I.C. 34–4–16.5–3(7). Summary [j]udgment is entered in favor of the City and against the Plaintiffs.

*LKI:*

There can be no doubt that LKI had no duty to erect any traffic control device. In fact, the applicable regulations may prohibit such action. However, a developer of land should have known of the existence of City's Executive Order No. 2, which would have allowed LKI to request traffic control

at potentially dangerous or convenient places. The duty owed by LKI to a person using its section of Brokenhurst Road is found, generally, in the common law of this State regarding 'public invitees'.

[_____] There is no question of fact regarding the implied invitation of LKI to the Tunney vehicle to come upon its property and use its road. As a matter of law, a landowner owes a duty to a public invitee to exercise reasonable care for the protection of the invitee while he or she is upon the property. *Burrell v. Meads,* (Ind. 1991) 569 N.E.2d 637. In the case at bar, the 'invitee' was exposed to a mound of dirt which may have obstructed her view and to an uncontrolled intersection, both over which LKI had some control. If the accident complained of had occurred on LKI property, perhaps the question would be much easier to address. However, the accident occurred in the middle of the intersection off of LKI's land. Does the duty LKI owes to public invitees extend past the boundaries of its property? The case of *Pitcairn v. Whiteside* (1941) 109 Ind.App. 693, 34 N.E.2d 943 stated:

'[T]he owner of land adjacent to a highway owes a duty to the travelling public to prevent injury to travelers upon the highway from any unreasonable risks created by the property's dangerous condition which the landowner knew or should have known about. Whether this duty is discharged is a question of fact for the jury.['] At p. _____

In other words, if there is a reasonably foreseeable harm to persons using an adjacent road and the victim is reasonably foreseeable, the law will impose a duty upon LKI. The existence of a duty in this case is a mixed question of law and fact which must be resolved by the fact finder. *State v. Cornelius,* (Ind.App. 5 Dist., 1994) 637 N.E.2d 195.

Regarding this issue, [s]ummary [j]udgment is DENIED.

*Intervening Cause:*

The fundamental test of proximate cause remains reasonable foreseeability, even where there is an independent intervening act. 'If harm is the natural, probable, and

foreseeable consequence of the first negligent act or omission, the original wrongdoer may be held liable, even though other independent agencies intervene between his negligence and the ultimate result.' *Havert v. Caldwell*, (Ind.1983) 452 N.E.2d 154 at p. 59 [159]. The question of whether the vehicle on Fall Creek Road was within the zone of risk created by LKI's alleged negligent use of its property is an ultimate jury question.

The Motion for Summary Judgment on this issue i[s] **DENIED.**" *Record* at 814–817.

L.K.I. filed a Verified Petition to Accept Jurisdiction, which we granted. L.K.I. presents four issues in this interlocutory appeal:

1. Did the trial court abuse its discretion when it excluded from the summary judgment hearing deposition testimony taken in the Sweeney action?

2. Did the trial court err when it concluded that the question of whether L.K.I. owed a duty was a mixed question of law and fact and denied L.K.I.'s motion for summary judgment?

3. Did the trial court err when it failed to conclude that Sarah Tunney's negligence was a superseding intervening cause?

4. Did the trial court err when it granted summary judgment to the City of Indianapolis?

### 1.

L.K.I. argues the trial court abused its discretion when it excluded deposition testimony of Sarah Tunney from the summary judgment hearing. The trial court ordered the deposition excluded since the Tyners did not receive notice of the taking of the deposition and were not present or represented at the taking of the deposition. L.K.I. argues that the court should have admitted the testimony, inasmuch as it was taken under oath by a party who had the same motive as the Tyners' to cross-examine Tunney and was a statement against interest as described by Indiana Rules of Evidence, Rule 804(b)(3). Furthermore, L.K.I. contends, the deposition meets "every requirement of an affidavit as contemplated by Trial Rule 56" of the

Indiana Rules of Procedure. Appellant's Brief at 32.

 The admission or exclusion of a deposition is within the sound discretion of the trial court. *Rambend Realty Corp. v. Backstreets Band* (1985), Ind.App., 482 N.E.2d 741. It is elementary that a party offering a deposition into evidence bears the burden of establishing its admissibility. *Gates v. Rosenogle* (1983), Ind.App., 452 N.E.2d 467, 472. Indiana Rules of Procedure, Trial Rule 32 governs the use of depositions upon the hearing of motions. Paragraph (A) of the rule states:

> "(A) Use of Depositions. At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition, by or against any party who had reasonable notice thereof or by any party in whose favor it was given...."

 The Sweeneys deposed Tunney in the action they instituted against Tunney and Dickson. Neither L.K.I. nor the Tyners were parties to the action. Tyner did not receive notice of the deposition and was neither present nor represented by counsel at the taking of the deposition. The statement is inadmissible under T.R. 32.

Although Tunney's deposition does not comply with T.R. 32, L.K.I. urges us to interpret the rule in conjunction with the Indiana Rules of Evidence. L.K.I. argues that despite its nonconformance with T.R. 32(A), the deposition is admissible pursuant to the Indiana Rules of Evidence, Rule 801(b)(1) and Rule 804(b)(3), which govern the admission of hearsay testimony when a witness is unavailable.

The fact that a statement may be admissible under Rule 804(b) does not cure its failure to comport with T.R. 32. Tyner did not receive notice of the deposition and was neither present nor represented upon its taking. Because Tyner was not given the opportunity to safeguard his interests as contemplated by T.R. 32, we may not proceed to a determina-

tion of whether the statement qualifies as an exception to the hearsay rule.

L.K.I. alternatively contends that even if the statement does not qualify as a deposition, it should have been admitted as "a detailed and pointed affidavit." Appellant's Brief at 32. Indiana Rules of Procedure, Trial Rule 56(E) states in part:

> "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

According to L.K.I., the statement "establish[es] that [Tunney] knew that she was travelling on a roadway which did not have the right of way at its intersection with Fall Creek Parkway." Appellant's Brief at 31–32. Furthermore, it "indicates that Ms. Tunney was aware of the approach of the Dickson vehicle and that she thought that she could clear the intersection without incident." Appellant's Brief at 32. L.K.I. utilizes these portions of the statement in its argument that Tunney's intervening negligence superseded any liability on the part of L.K.I.

■ Our research reveals that the question of whether a statement that fails to qualify as a deposition may be admitted as an affidavit has not been addressed in Indiana. In *Pierce v. Bank One–Franklin, NA* (1993), Ind.App., 618 N.E.2d 16, *trans. denied,* we concluded that a question-and-answer-style affidavit that was neither submitted as a deposition nor received or used by the trial court as a deposition was admissible. The federal courts have allowed deposition testimony as a substitute for affidavits for the purposes of motions that require support by affidavits, despite the testimony's noncompliance with Federal Rule of Civil Procedure 32. *See Microsoft Corp. v. Very Competitive Computer Products, Corp.* (N.D.Cal.1987), 671 F.Supp. 1250. The reasons for accepting a deposition as a substitute affidavit are practical, and the approach is to determine whether the deposition testimony is at least as reliable as an affidavit. *In re Sunset Bay Associates* (9th Cir.1991), 944 F.2d 1503. "Because there is no reason to believe that the sworn answers to questions are less reli-

able than an affidavit, to the extent that the content of the deposition testimony is otherwise admissible, that testimony should be admitted on summary judgment." *Id.* at 1510. We adhere to this line of reasoning and conclude that upon preliminary matters requiring support by an affidavit, a deposition that does not qualify under T.R. 32(A) may be admitted as a substitute affidavit, so long as it is otherwise admissible.

■ Affidavits which support and oppose motions for summary judgment must be made on personal knowledge, must affirmatively show that the affiant is competent to testify as to matters covered, and must set forth facts that would be admissible in evidence. *Comfax Corp. v. North American Van Lines, Inc.* (1994), Ind.App., 638 N.E.2d 476. An affidavit need not contain an explicit recital of personal knowledge or competency when its contents demonstrate that the material parts thereof are statements within the affiant's personal knowledge and competency. *Kahf v. Charleston South Apartments* (1984), Ind.App., 461 N.E.2d 723, *trans. denied.* Mere assertions of conclusions of law or opinions in an affidavit do not suffice. *Comfax Corp., supra.* In order to comply with T.R. 56(E), affidavits should follow the same form as though the affiant were testifying in court. *Id.*

■■ In the present case, Tunney testified under oath as to the circumstances surrounding the collision. As the driver of the automobile, Tunney had personal knowledge of what transpired at the intersection. From such personal knowledge flowed the competency to testify. *See Kahf, supra.* The record is absent any indication that Tunney was otherwise an incompetent witness. The deposition should have been admitted as a substitute affidavit. Because we determine in our discussion of Issue 3, however, that the trial court properly denied L.K.I.'s motion for summary judgment, the error was harmless.

2.

The trial court concluded that L.K.I. owed Tunney, as a public invitee, a duty of reasonable care. The court, however, also stated

that the question of duty was compounded by the fact that Tunney's injury did not occur on L.K.I.'s premises. The court ultimately determined that the existence of a duty in the case is a mixed question of law and fact which must be resolved by the fact finder.

L.K.I. contends that the trial court erred in denying its motion for summary judgment. Specifically, L.K.I. argues that Tunney was not a public invitee. L.K.I. also maintains that it owed no duty to a third party whose injuries did not occur on L.K.I.'s premises.

■ Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. T.R. 56(C). At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. *Id.* The burden is on the moving party to prove there are no genuine issues of material fact and he is entitled to judgment as a matter of law. *Midwest Commerce Banking Co. v. Livings* (1993), Ind.App., 608 N.E.2d 1010. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial. *Id.*

■ When reviewing an entry of summary judgment, we stand in the shoes of the trial court and liberally construe all designated evidentiary material in favor of the nonmoving party. *Rotec, Div. of Orbitron, Inc. v. Murray Equip., Inc.* (1993), Ind.App., 626 N.E.2d 533. We may not search the entire record to affirm the judgment, but may consider only the evidence which was specifically designated to the trial court. *Keating v. Burton* (1993), Ind.App., 617 N.E.2d 588, *trans. denied.* We consider the pleadings and evidence sanctioned by T.R. 56(C) without deciding their weight or credibility. *Rickels v. Herr* (1994), Ind.App., 638 N.E.2d 1280.

■ We first address L.K.I.'s contention that L.K.I. did not owe a duty to Tunney, since Tunney was not a public invitee. The existence of a duty is a question of law. *Sports, Inc. v. Gilbert* (1982), Ind.App., 431

N.E.2d 534. A person entering upon the land of another comes upon the land either as an invitee, licensee or trespasser. *Smith v. Syd's, Inc.* (1992), Inc., 598 N.E.2d 1065 (incorporating by reference *Smith v. Syd's, Inc.* (1991), Ind.App., 570 N.E.2d 126). The status of the person upon the land determines the duty owed to him by the landowner. *Id.* A person's status on the land is also a matter of law for determination by the trial court, not the jury. *Id.*

■ A public invitee is an individual who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public. *Burrell v. Meads* (1991), Ind., 569 N.E.2d 637. We have held that an employee who fell on steps leading to a bank and other businesses was the bank's public invitee where the general public had used the area as a public walkway for years without it officially being designated as such, the bank never posted signs restricting access and the bank maintained the stairway. *Jump v. Bank of Versailles* (1992), Ind.App., 586 N.E.2d 873. L.K.I. constructed and maintained Brokenhurst Road. According to L.K.I., the road had been used by the public "for some time" prior to the collision. *Record* at 545. No signs prohibited the general public from utilizing the road. Tunney accepted L.K.I.'s implied invitation to travel on Brokenhurst and was therefore L.K.I.'s public invitee. As such, L.K.I. owed Tunney the duty to exercise reasonable care for her protection while she was on L.K.I.'s premises. *Id.*

■ L.K.I. next denies that it owed a duty to Tunney because the collision occurred in an intersection that was not part of L.K.I.'s property. The trial court applied *Pitcairn, supra,* and ruled that L.K.I., as the owner of land adjacent to a highway, owed a duty to Tunney as a member of the traveling public to prevent injury to Tunney from any unreasonable risks created by the property's dangerous condition which L.K.I. knew or should have known about. Whether the harm and victim were reasonably foreseeable, the court determined, were questions for the fact finder.

Because Tunney was a public invitee, and not a traveler on an adjacent roadway, it is not necessary to apply *Pitcairn*. As an invitor, L.K.I. had a duty to exercise reasonable care to Tunney while she was on L.K.I.'s premises. While on L.K.I.'s premises, Tunney was exposed to an uncontrolled intersection and a dirt mound which obstructed her view of the adjacent roadway. The fact that the resulting harm occurred in the middle of the intersection is of no consequence. L.K.I.'s duty is similar to an invitor's duty to provide a safe and suitable means of ingress and egress to invitees. *See Lutheran Hosp. of Indiana, Inc. v. Blaser* (1994), Ind.App., 634 N.E.2d 864. The use of L.K.I.'s premises in the manner implicit in L.K.I.'s invitation required Tunney to cross Fall Creek Road. The trial court did not err in denying L.K.I.'s motion for summary judgment.

### 3.

L.K.I. contends that the trial court erred when it concluded that the question of whether co-defendant Tunney's failure to yield was an intervening cause, thus extinguishing L.K.I.'s liability, was not susceptible to summary judgment. The trial court ruled that the issue of whether the collision was a foreseeable result of L.K.I.'s allegedly negligent use of its property was a question for the jury and denied L.K.I.'s motion for summary judgment.

Under common law, independent intervening conduct precludes the original wrongdoer's liability when the later conduct constitutes a cause interrupting the natural sequence of events, turning aside their course, preventing the natural and probable result of the original act or omission, and producing a result that could not have been reasonably anticipated. *Crull v. Platt* (1984), Ind.App., 471 N.E.2d 1211, *trans. denied.* It is generally for the jury to determine whether an intervening cause was such as to break the causal connection between defendant's act and the injury. The essential element in reaching this determination is foreseeability. *McKinney v. Public Serv. Co. Of Indiana, Inc.* (1992), Ind.App., 597 N.E.2d 1001, *trans. denied.*

In 1983, our legislature enacted Ind.Code 34–4–33–1 *et seq.*, the Comparative Fault Act. The purpose of the Act was to modify the common-law rule of contributory negligence under which a plaintiff who was only slightly negligent was precluded from recovery. *Barber v. Cox Communication, Inc.* (1994), Ind.App., 629 N.E.2d 1253, *trans. denied.* In accordance with this purpose, the Act established a scheme whereby the factfinder is required to allocate percentages of fault among "all persons who caused or contributed to cause the alleged injury". IC 34–4–33–5. The effect of Indiana's comparative fault statute on the doctrine of intervening cause is an issue of first impression in our state.

An intervening cause is a cause which comes into active operation in producing a result after the negligence of the defendant. W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on Torts* § 44 (5th ed. 1984 & Supp.1988).

> "On its face, the problem is one of whether the defendant is to be held liable for an injury to which the defendant has in fact made a substantial contribution, when it is brought about by a later cause of independent origin, for which the defendant is not responsible. In its essence, however, it becomes again a question of the extent of the defendant's original obligation, and once more the problem is not primarily one of causation at all, since it does not arise until cause in fact is established. *It is rather one of the policy as to imposing legal responsibility.*" (Emphasis added) *Id.* at 301.

Intervening cause, therefore, acknowledges a defendant's negligence, yet absolves the defendant of liability when the negligence is deemed remote. The adoption of comparative negligence, with its apportionment of fault, renders the protection of a remote actor unnecessary. As the Appellate Court of Illinois, quoting Schwartz, Comparative Negligence, Sec. 4.3, stated:

> "Cases in which, prior to the adoption of comparative negligence, plaintiff might have lost under proximate cause rules, because the act of plaintiff or third parties was regarded as a 'supervening cause', might be reconsidered because the court

can now reach a fair decision by apportioning some of the blame to the defendant and some to third parties or to the plaintiff himself." *Michalak v. County of LaSalle* (1984), 121 Ill.App.3d 574, 77 Ill.Dec. 35, 459 N.E.2d 1131.

█ The comparison of fault inherent in the doctrine of intervening cause has been incorporated into our comparative fault system. If Tunney's negligence was a proximate cause of the accident, such does not immunize L.K.I. from liability for damages proximately caused by its negligence. Rather, Tunney's conduct triggers the apportionment principles of comparative fault, and the foreseeability of her negligence is simply a matter for the fact finder to consider in allocating fault. The trial court properly reserved the issue for the jury.

### 4.

L.K.I. and the Tyners maintain that the trial court erred when it granted summary judgment to the City of Indianapolis. The court determined that the City had no statutory duty to erect a sign on L.K.I.'s property. We conclude that, pursuant to the Indiana Tort Claims Act, the City was immune from liability. Consequently, we do not address the issue of whether the City had a duty to erect traffic control devices at the intersection.

█ Ind.Code 34–4–16.5–3(6), Indiana's Tort Claims Act, states that "a governmental entity . . . is not liable if a loss results from . . . the performance of a discretionary function"[1]. Whether a particular act is discretionary and, therefore, immune under our Tort Claims Act is a question of law for determination by the courts. *Greathouse v. Armstrong* (1993), Ind., 616 N.E.2d 364. In deciding whether an act is discretionary, we utilize the planning-operational test as articulated in *Peavler v. Monroe County Bd. of Comm'rs* (1988), Ind., 528 N.E.2d 40. Under the planning-operational test, government entities will not be held liable for alleged negligence arising from decisions which are made at a planning rather than opera-

tional level. *Greathouse, supra.* Planning activities include acts or omissions undertaken by an entity in the exercise of a legislative, judicial, executive or planning function which involves formulation of basic policy decisions characterized by official judgment or discretion in weighing alternatives and choosing public policy. *Peavler, supra.* When the conduct of the government employee in implementing department regulations requires only performance of pre-determined procedures, rather than the formulation of policy, such conduct is not immunized from judicial review as a discretionary function. *Greathouse, supra.* The governmental entity seeking to establish immunity bears the onus of proving that the challenged act or omission was a policy decision made by consciously balancing risks and benefits. *Peavler, supra.*

We must keep in mind that the purpose and policy underlying governmental immunity is the cornerstone for evaluating any claim of governmental immunity. *Id.* The policy upon which discretionary immunity is based arises from the separation of powers between the coordinate branches of government and the notion that we should prevent tort actions from becoming a vehicle for judicial review of government policy-based decisions. *City of Crown Point v. Rutherford* (1994), Ind.App., 640 N.E.2d 750, *trans. denied.*

L.K.I. and the Tyners argue that the City never considered whether to place a traffic control device at Brokenhurst Road and Fall Creek Parkway and is therefore not immune from liability inasmuch as it never engaged in a conscious policy-oriented analysis. As in *Rutherford, supra,* we consider this characterization of the issue to be overly narrow.

In *Rutherford,* the plaintiff fell on a broken portion of sidewalk and sued the city of Crown Point, Indiana. The trial court applied *Peavler* and reasoned that since the record was absent evidence that the city ever contemplated repairing the specific portion of the sidewalk where the plaintiff fell, the city had never engaged in a policy-oriented deci-

---

1. The Tyners contend that the City waived this defense in failing to raise it at the trial level. A party may not raise an issue on appeal that was not raised in the trial court. *Davidson v. Cincin-* nati *Ins. Co.* (1991), Ind.App., 572 N.E.2d 502. Nevertheless, we choose to examine the issue on the merits. *See Allen v. Scherer* (1983), Ind.App., 452 N.E.2d 1031.

sion-making process. We reversed the trial court's decision based on evidence that Crown Point had instituted a systematic process to renovate its sidewalks wherein it had balanced competing interests and allocated scarce resources.

In the present case, then mayor William Hudnut issued Executive Order No. 2 to correct the "situation concerning the absence of traffic control devices in subdivisions and additions to the City where the streets have not been accepted by the Department of Transportation." Executive Order 2–1976. Executive Order No. 2 requires the Traffic Engineer of the City to submit recommendations to the Transportation Board regarding the installation of traffic control devices in subdivisions or additions when one of three conditions is met, including:

"a. The streets are formally accepted by the Department of Transportation.

b. [Eighty-one percent] of the lots in such subdivision have been built upon or three years has expired, even though such streets have not been formally accepted by DOT. [or]

c. The developer of such subdivision or addition has notified the Department of Transportation in writing that the subdivision or addition, or certain streets therein, have been opened up to the public, and the construction of streets and homes is such that traffic control devices are necessary." Executive Order 2–1976.

▆▆▆ A city's considered decision to entrust placement of traffic control devices to a traffic engineer is not reviewable under tort standards. *See Peavler, supra.* However, if a traffic engineer incorrectly performs pre-determined procedures, then his or her decision is reviewable. *See id.* At the time of Tunney's collision with Dickson, Brokenhurst Road did not qualify under the above qualifications and the order therefore did not require the Traffic Engineer to submit a report. Neither L.K.I. nor Tyner allege that the traffic engineer negligently implemented the executive order. Rather, their arguments center on the City's failure to engage in a decision-making process concerning the intersection. What this argument ignores is that Executive Order No. 2 was issued in

response to the problem of the lack of traffic control devices in subdivisions and additions that were not fully complete and whose streets had not yet been accepted by the Department of Transportation. Rather than inefficiently expending the City's limited resources in an evaluation on each new subdivision, Executive Order No. 2 prioritized new subdivisions so that additions with the highest traffic flow and the greatest need for the installation of traffic control devices would be examined first. Former Mayor Hudnut engaged in a policy-oriented decision-making process when he executed the order. We are forbidden from second-guessing his judgment. The City is immune from liability.

Judgment affirmed.

RUCKER, J., concurs.

KIRSCH, J., concurs in result.