**Gary STRALEY and Jerry J. Straley, Appellants–Plaintiffs,**

v.

**Randy KIMBERLY, Frank Sweezy, Indiana Underground Plant and Protection Services, Inc., a/k/a Holely Molely, and Majestic Builders, Inc., Appellees–Defendants.**

No. 41A01–9612–CV–388.

Court of Appeals of Indiana.

Oct. 9, 1997.

Rehearing Denied Jan. 27, 1998.

Saul L. Ruman, David W. Holub, Ruman, Clements, Tobin & Holub, P.C., Hammond, for Appellants–Plaintiffs.

Donald L. Dawson, S. Michael Woodard, Eric D. Johnson, Kightlinger & Gray, Indianapolis, for Appellee–Defendant Randy Kimberly.

Paul B. Poracky, Kelly E. O'Malley, Spangler, Jennings & Dougherty, P.C., Merrillville, for Appellee–Defendant Indiana Underground Plant and Protection Services, Inc.

Keith L. Faber, Celina, OH, Donald E. Snow, Donald E. Snow & Associates, Greenfield, Karl Mulvaney, Mary H. Watts, James P. Strenski, Bingham Summers Welsh & Spilman, Indianapolis, for Appellee–Defendant Frank Sweezy.

John L. Lisher, Osborn Hiner & Lisher, P.C., Indianapolis, for Appellee–Defendant Majestic Builders, Inc.

## OPINION

BAKER, Judge.

Appellants-plaintiffs Gary and Jerry Straley, as husband and wife, (Straleys) appeal the trial court's grant of summary judgment in favor of appellees-defendants Frank Sweezy, Randy Kimberly, Majestic Builders Inc. (Majestic) and Indiana Underground Plant and Protection Services, a/k/a Holely Molely (Holely Molely) after Gary Straley, a gas company employee, was injured while attempting to fix a ruptured gas main. The Straleys raise various arguments supporting the reversal of the trial court's grant of summary judgment. However, because we find the issue of proximate cause to be dispositive, we address only that issue on appeal.

### FACTS

The facts most favorable to the non-movants, the Straleys, reveal that Majestic was the prime contractor on a home construction project in a subdivision in Johnson County. As part of the project, a water line was to be laid from one of the houses in the subdivision to a water line near a bordering street. Consequently, Majestic hired Kimberly, a subcontractor, to lay the water line and Kimberly, in turn, hired Sweezy to excavate the trench.

Before Sweezy began to excavate the trench, Tim Cronk, Majestic's project superintendent, contacted Holely Molely and asked them to contact the gas company so that it could mark its underground gas lines.[1] Holely Molely, however, has no record of Cronk's call or any similar request from any person associated with the excavation project. Nevertheless, at the time the excavation occurred, some of the underground gas lines had been marked.

Thereafter, on December 23, 1992, Kimberly met with Sweezy and informed him where to dig the trench. Kimberly then checked to ensure that the gas lines had been marked and instructed one of its employees, Keith Taylor, to remain with Sweezy during the excavation to aid him in locating the gas lines and in digging the trench. Kimberly then left the site.

Shortly after Sweezy began digging the trench with a backhoe, he accidentally severed a plastic gas service line, running from the main line to the house. Instead of reporting the damage to the gas company,

---

1. Holely Molely is an agency that acts as a conduit between a party who intends to excavate and the gas company. Specifically, it notifies the gas company that a party, who intends to excavate, has made a request to have the underground gas lines marked in the area of the excavation.

however, Sweezy clamped the line and continued to dig until he struck the main gas line, which he claims was not properly marked.

Immediately thereafter, Sweezy ceased digging, called Cronk, informed him of the damaged line and asked him to call Indiana Gas. According to Cronk, he promptly called the gas company from his car and then proceeded to the excavation site. After he arrived, Cronk again called the gas company to alert them of the ruptured line.

In response to the call, Indiana Gas dispatched a repair crew to the site, which included Mike Graham, a foreman for Indiana Gas, and Gary Straley. After they arrived at the accident site, Gary smelled gas and heard it escaping with a "loud roar" indicating a major leak. Gary's deposition at 58. Due to the size of the leak and the possibility of fire and explosion, the repair crew determined that the gas leak needed to be repaired immediately. Graham's deposition at 27; Gary's deposition at 59. As a result, Graham directed the crew to clamp off the main line and to construct a bypass line around the leak.

In order to complete the repairs, Graham's crew dug a hole directly north of the damaged gas main. Gary and Graham then entered the hole to install a two-inch clamp. After they had the clamp in position, Graham handed Gary a ratchet wrench and a socket to tighten the clamp. Immediately thereafter, and more than one hour after the crew had assumed control of the repairs, the gas ignited, causing Gary injuries. Record at 728–29. Following an investigation, the gas company was unable to discover what ignited the gas.

On December 20, 1994, the Straleys filed a complaint against Sweezy, Kimberly, Majestic and Holely Molely. In particular, the Straleys alleged that Sweezy and Kimberly negligently severed the underground gas line and, alternatively, that Kimberly negligently entrusted the excavation work to Sweezy. The complaint further alleged that Majestic also negligently contributed to the severance of the underground gas line and, in the alternative, negligently entrusted Sweezy and Kimberly to lay the water line. Finally, the complaint alleged that Holely Molely negligently failed to notify the gas company to have the gas lines marked.

In response, Sweezy, Kimberly and Majestic each filed a motion for summary judgment. In his motion, Sweezy contended that he did not owe Gary a duty and that his actions were not the proximate cause of Gary's injuries. Kimberly also asserted that he did not owe a duty to Gary, that the danger which Gary encountered was open and obvious and that he was not the proximate cause of Gary's injuries. Finally, Majestic argued in its motion that it was not liable for Sweezy's or Kimberly's alleged negligent act since they were both independent contractors. It further alleged that any alleged negligent act on its part was not the proximate cause of Gary's injuries.

On May 14, 1996, the trial court held a hearing on the motions during which Holely Molely orally moved for summary judgment pursuant to Ind.Trial Rule 56(B). On May 22, 1996, the trial court granted all of the defendants' motions for summary judgment. In particular, the court found that none of the defendants owed Gary a duty of care. The court also concluded that, as a matter of law, none of the alleged negligent acts was the proximate cause of Gary's injuries. Thereafter, the Straleys filed a motion to correct error which the trial court denied. The Straleys now appeal the grant of summary judgment in favor of each defendant.

### DISCUSSION AND DECISION[2]

Initially, we note our standard of review. The purpose of summary judgment

2. Oral argument was held in this cause on August 6, 1997. Prior to commencing the argument, each of the parties' attorneys introduced themselves and their respective clients. However, when the Straleys' attorney introduced Mr. Straley, he felt it necessary to inform the court that the manner in which Mr. Straley was dressed was due to the injuries he suffered as a result of the explosion. This behavior was highly improper. First, there was nothing inappropriate about Mr. Straley's appearance or his attire. Second, we would remind counsel that this court's responsibility and duty is to determine the critical legal issues before us. To the extent that counsel sought to influence the court by his comments, we admonish his behavior.

is to terminate litigation which can be determined as a matter of law. *Funk v. Funk,* 563 N.E.2d 127, 129 (Ind.Ct.App.1990), *trans. denied.* When reviewing the propriety of the grant of summary judgment, we stand in the same position as the trial court. *Reed v. Luzny,* 627 N.E.2d 1362, 1363 (Ind.Ct.App. 1994), *trans. denied.* Summary judgment is only appropriate when the moving party demonstrates that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). Once the movant has sustained this initial burden, the opposing party must respond by designating all parts of pleadings, depositions, answers to interrogatories, admissions, and any other matters on which it relies which demonstrate that a genuine issue exists for trial. *Id.* We consider the facts in the light most favorable to the nonmoving party. *Id.* However, we may sustain the trial court's decision upon any theory supported by the designated materials. T.R. 56(C). Although summary judgment is generally inappropriate in a negligence case, it may be appropriate if the defendant demonstrates that the undisputed facts negate at least one element of the plaintiff's claim. *Barsz v. Max Shapiro, Inc.,* 600 N.E.2d 151, 152 (Ind.Ct.App.1992); *Goldsberry v. Grubbs,* 672 N.E.2d 475, 477 (Ind.Ct. App.1996).

In order to recover under a theory of negligence, a party is required to establish the following: 1) the defendant owed the plaintiff a duty of care; 2) the defendant breached that duty by failing to conform his conduct to the requisite standard of care; and 3) the breach was the proximate cause of the plaintiff's injuries. *Blake v. Calumet Const. Corp.,* 674 N.E.2d 167, 169–170 (Ind. 1996). Further, a party must establish the following elements for a claim of negligent entrustment: 1) an entrustment; 2) to an incapacitated person or one who is incapable of using due care; 3) with actual and specific knowledge that the person is incapacitated or incapable of using due care at the time of the entrustment; 4) proximate cause; and 5) damages. *Hardsaw v. Courtney,* 665 N.E.2d 603, 606 (Ind.Ct.App.1996). Here, the Straleys contend that a question of fact exists regarding whether the defendants' acts were

the proximate cause of Gary's injuries. Specifically, they argue that Gary's injuries were the foreseeable consequence of the defendants' negligent acts. In response, the defendants argue that although they may have initially caused the gas leak, the gas company's actions in repairing the gas main, including instructing Gary to clamp the line without turning off the gas, were intervening superseding causes. Therefore, they contend that they are not liable for Gary's injuries as a matter of law.

In determining whether an act is the proximate cause of another's injury, this court considers whether the injury was a natural and probable consequence of the negligent act, which, in the light of the attending circumstances, could have been reasonably foreseen or anticipated. *Goldsberry,* 672 N.E.2d at 479. Thus, to be considered a proximate cause, the negligent act must have set in motion a chain of circumstances which in natural and continuous sequence lead to the resulting injury. *City of Portage v. Lindbloom,* 655 N.E.2d 84, 86 (Ind.Ct.App. 1995), *trans. denied.* However, the intervention of an independent, superseding negligent act will relieve the original negligent actor of legal liability if that act could not have been reasonably foreseen. *Lutheran Hosp. of Indiana, Inc. v. Blaser,* 634 N.E.2d 864, 871 (Ind.Ct.App.1994). The policy underlying proximate cause is that we, as a society, only assign legal responsibility to those actors whose acts are closely connected to the resulting injuries, such that imposition of liability is justified. *Adams Tp. of Hamilton County. v. Sturdevant,* 570 N.E.2d 87, 90 (Ind.Ct.App.1991), *trans. denied.* Stated another way, proximate cause sets the parameters in which an actor "can expect the law to provide by way of protection to his activity." *Galbreath v. Engineering Constr. Corp.,* 149 Ind.App. 347, 356, 273 N.E.2d 121, 127 (1971). We now turn to the facts of this case.

Here, the facts most favorable to the Straleys reveal that while Sweezy was in the process of excavating the trench for the water line, he struck the main gas line. At this time, Sweezy and the other defendants who contributed to the severance of the gas main,

started a chain of events which eventually led to Gary's injuries. However, the record also reveals that the defendants immediately contacted the gas company to inform them of the leak, and, thereafter, the gas company took several unforeseeable steps which broke the chain of causation. First, the gas company immediately dispatched a repair crew to the excavation site to assess the damage to the main. Then, despite the fact that Gary heard and smelled escaping gas and that the leak was major, the crew decided to install a bypass line rather than to turn off the gas. The crew then dug a hole north of the damaged main and instructed Gary to enter the hole filled with escaping gas and to place a clamp on it. Finally, it was only after Gary entered the hole that an unknown source ignited the gas, creating the explosion which caused his injuries.

■ This court has previously said that a gas company is bound to anticipate that, if gas is permitted to escape, it may be ignited in some way and produce injury. *Huntington Light & Fuel Co. v. Beaver*, 37 Ind.App. 4, 10, 73 N.E. 1002, 1004 (1905), *trans. denied; see also* C.J.S. Gas § 120 (noting the highly dangerous character of gas). Thus, the gas company should have known that attempting the repairs, without turning off the gas, created a high risk of explosion and resulting injury to its employees. Thus, the defendants could not have reasonably foreseen that the gas company would attempt to fix a major gas leak without turning off the gas. As a result, the gas company's acts

were unforeseeable intervening acts which broke the line of causation.

■ Furthermore, we find that assigning legal liability to the defendants would be inconsistent with the policy underlying proximate cause. In the present case, the defendants called the gas company because it alone had the experience and expertise to make the necessary repairs and to diminish the dangerous situation created by the gas. Further, the explosion did not occur until one hour after the gas company had assumed control of the site. To hold the defendants liable for Gary's injuries would make them responsible for actions and events which were beyond their control and make them guarantors of a gas employee's safety.[3] Therefore, we conclude that, as a matter of law, the defendants were not the proximate cause of Gary's injuries. *See Crull v. Platt*, 471 N.E.2d 1211, 1215–16 (Ind.Ct.App.1984) (intervening act of repair person who failed to reconnect gas line on plaintiff's camper heating unit was proximate cause of plaintiff's injuries caused by subsequent explosion in camper, superseding any liability of seller and manufacturer of camper for defective wiring in heating unit which led plaintiffs to seek repairs), *trans. denied; Walker v. Jones*, 511 N.E.2d 507, 510 (Ind.Ct.App.1987) (presence of calf in median of interstate highway was not proximate cause of vehicle collision where evidence indicated that accident was caused by intoxicated driver of one of the vehicles and inattentive driver of second vehicle who was watching the calf being chased).[4]

**3.** Our conclusion that the defendants should not be held liable for Gary's injuries is also consistent with the policy underlying the Damage to Underground Facilities Act. Pursuant to the act, a person responsible for an excavation must notify the gas company if one of its gas lines is ruptured. IND.CODE § 8–1–26–21(b)(1). The duty, however, only extends until the gas company arrives. *See* I.C. § 8–1–26–21(b)(1) and (2) (responsible party must notify local police and fire department and take other action necessary to protect persons and property and to minimize the hazards until *"arrival of the [gas company] personnel."*) (emphasis added). The policy behind this legislation is to encourage excavators to report damaged lines in order to allow the gas company to assume control of the repair process. This policy, however, necessarily involves the assumption that the gas company, as an expert,

will not cause further damage to its own lines or place the public or its employees at risk.

**4.** We come to this conclusion despite the fact that another panel of this court has recently held that the adoption of the Comparative Fault Act renders the determination of proximate cause as a matter of law obsolete. *See L.K.I. Holdings, Inc. v. Tyner*, 658 N.E.2d 111, 119–20 (Ind.Ct. App.1995), *trans. denied.* Specifically, the *Tyner* court stated that when this court determines that an original negligent actor is not the proximate cause of a resulting injury, it is because we have made a policy decision that he is too far removed from the injury, although he was partially negligent. *Id.* Thus, the court reasoned that because the Act apportions fault to all negligent actors, we no longer need to exonerate the original

Nevertheless, the Straleys contend that whether the defendants' acts were the proximate cause of his injuries is a question of fact to be determined by the trier of fact. In support of their argument, the Straleys direct our attention to *Galbreath v. Engineering Constr. Corp.*, 149 Ind.App. 347, 273 N.E.2d 121 (1971). In *Galbreath*, a gas company employee was injured in an explosion while repairing a gas line ruptured by a construction company employee who had detonated dynamite too close to a gas main. *Galbreath*, 149 Ind.App. at 348, 273 N.E.2d at 122. The gas company employee filed an action against the construction company, alleging that it was strictly liable for conducting an ultrahazardous activity in close proximity to the gas main, and negligent for detonating the dynamite too close to the gas main and leaving the backhoe engine operating near the ruptured gas line. *Id.* Prior to trial, however, the trial court entered judgment for the construction company on the employee's claim for absolute liability. *Id.*

On appeal, this court held that the employee could recover under the theory of absolute liability if the construction company's employee's acts were the proximate cause of the gas company employee's injuries. *Galbreath*, 149 Ind.App. at 353, 273 N.E.2d at 125. In particular, this court held that whether the gas company employee was within the foreseeable zone of risk or danger created by the construction company's negligent act and whether the igniting agent of the gas was foreseeable was a matter for resolution by the trier of fact. *Galbreath*, 149 Ind.App. at 359, 273 N.E.2d at 128. As a result, we reversed the trial court and remanded the case for trial. *Id.* Similarly, the Straleys argue that whether the gas company's actions in repairing the gas line were unforeseeable, intervening causes is a question for the jury's determination, precluding summary judgment. We disagree.

At first glance, the Straleys' reliance on *Galbreath* seems correct. However, upon closer examination, we find that our case is distinguishable. In the instant case, there is absolutely no evidence that the defendants took any action which could have caused the gas to ignite, whereas in *Galbreath*, there was evidence the defendants' caused the explosion by leaving their backhoe in operation near the ruptured gas line. Further, here, the explosion occurred after the gas company had assumed complete control over the excavation site, making it extremely unlikely that the gas was ignited by any other source than the gas company itself. Finally, here, more than one hour passed after the gas company had retained control of the excavation site, causing the chain of causation to become attenuated. Thus, we conclude that the holding in *Galbreath* does not apply. As a result, we affirm the trial court's decision that the defendants were not the proximate cause of Gary's injuries as a matter of law.

Summary judgment granted in favor of the defendants is affirmed.

ROBERTSON and HOFFMAN, JJ., concur.

---

negligent actor through the doctrine of proximate cause. *Id.*

Although we agree with the holding in *Tyner* to the extent that when two negligent actors contribute to a resulting injury, they should both be held responsible we, nevertheless, find that in certain situations, such as the case at bar, the original negligent actor may be so removed from the resulting injury that we, as a society, cannot hold him responsible. As a result, we do not find the holding in *Tyner* applicable to the instant case.