George A. SCOTT, Appellant–Plaintiff,

v.

Malissa Elizabeth RETZ, R.N., and Indiana University, Appellees–Defendants.

No. 49A05–0904–CV–192.

Court of Appeals of Indiana.

Nov. 10, 2009.

---

**254**

Robert E. Feagley II, Lee, Cossell, Keuhn & Love, LLP, Indianapolis, IN, Attorney for Appellant.

Robert G. Weddle, Matthew W. Conner, Elizabeth Schuerman, Tabbert Hahn Earnest & Weddle, LLP, Indianapolis, IN, Attorneys for Appellee, Malissa Elizabeth Retz, R.N.

David J. Mallon Jr., Carly S. Everett, Ice Miller LLP, Indianapolis, IN, Attorneys for Appellee, Indiana University.

## OPINION

ROBB, Judge.

### Case Summary and Issues

George Scott, a Clarian Health Partners, Inc. ("Clarian") safety and security investigator, was stuck by a used uncapped syringe while investigating missing narcotics at Indiana University Hospital, which is operated by Clarian. Scott sued Malissa Retz, R.N., for negligence and Indiana University ("IU"), Retz's employer, for respondeat superior and negligent retention and supervision.[1] Scott appeals the trial court's grant of summary judgment to Retz and IU on all of Scott's claims, raising the single issue whether the trial court properly granted summary judgment. IU cross-appeals the trial court's order striking part of its affidavit designated in support of summary judgment, raising the issue whether the trial court properly concluded the affidavit contained impermissible hearsay. We conclude, based on the undisputed facts of Clarian's control of the uncapped needles prior to the needle stick, that Retz's and IU's actions were not a proximate cause of Scott's injury. Therefore, we affirm the trial court's grant of summary judgment to Retz and IU, and we need not address the merits of IU's cross-appeal.

### Facts and Procedural History[2]

Pursuant to our standard of review, we recite the facts most favorable to Scott as non-movant. Clarian is an umbrella organization operating Indiana University Hospital ("the Hospital"), Methodist Hospital, and Riley Hospital for Children. IU does not operate the Hospital. The employees in the emergency department of the Hospital are employed by Clarian, not IU. In May 2007, Retz was employed by IU as a nurse in the Research Department of IU's School of Medicine.

In 2007, Retz was the subject of disciplinary action by the Indiana State Board of Nursing. On May 16, 2007, Retz admitted that when renewing her nursing license she had falsely stated, under penalty of perjury, that she had not been terminated from professional employment when, in fact, she had been terminated from previ-

---

1. Clarian is not a party to this appeal.

2. We heard oral argument on October 13, 2009, at DePauw University in Greencastle, Indiana. We thank DePauw for its hospitality and counsel for their advocacy.

ous employment following an incident in which she improperly possessed morphine tablets while at work.

For four to six weeks prior to May 31, 2007, Retz had been injecting herself with Demerol improperly accessed through her position with IU. On May 30, 2007, Bernard Harris, a Clarian safety and security investigator, began investigating whether Retz was improperly diverting narcotics from the Hospital. Harris met with Retz's supervisor, nurse Sherry Wilson. Wilson told Retz about the investigation. Wilson and nurse Laurie Trevino attempted to escort Retz for drug testing, but Retz left work without authorization and could not be located later that day. Wilson was concerned for Retz's safety and contacted the Columbus Police Department to ensure Retz arrived home safely.

On May 31, 2007, Retz showed up for work. She stole morphine from an Accu-Dose room at the Hospital, injected herself with the morphine, and disposed of the used uncapped needles, syringes, and empty vials in the trash container of a women's restroom at the Hospital. Retz confessed this apparent suicide attempt to Trevino and Wilson. Wilson escorted Retz to the Hospital's emergency department. Retz told Wilson and others the used needles, syringes, and empty vials were still in the women's restroom trashcan.

The used, uncapped needles ended up in a brown paper bag that was delivered to the Hospital's emergency department and given to the emergency department physician attending Retz. The physician "put the bag to the side in the examination room." Appellant's Appendix at 196. When Wilson left the emergency department, the bag "was still in the examination room where Ms. Retz was." *Id.*

Nurse Colleen Higginson, employed by Clarian in the Hospital's emergency department, observed the bag's arrival in the emergency department and was aware "that this brown paper bag contained the needles and vials that Ms. Retz has [sic] used to inject herself." *Id.* at 231. Higginson thereafter contacted Clarian safety and security and delivered the bag to Harris. Harris, following the instructions of safety and security Lieutenant Tim Looper, had the bag transported to the safety and security dispatch center at Methodist Hospital. The bag was labeled with the following information: "Retz, Malissa E," "05/31/07," "Rutherford, William F," and "Emergency." *Id.* at 237. The bag was never placed in a sharps container, and the needles inside were never capped or placed in an internal sharps container. All Clarian employees had been trained in the proper handling of used needles, including packaging them in labeled sharps containers. There is no evidence the bag was ever in the custody or control of IU employees after it was transported to the emergency department. In an incident report written May 31, 2007, Harris stated in relevant part:

> According to ER staff members Retz admitted to them that she took the 4 vials of Meperidine. At that point Retz gave the ER staff members several empty vials of used uncapped needle syringes. The vials and syringes were turned into RN Colleen Higginson.... Higginson turned over the evidence to myself in a brown paper bag.

*Id.* at 162.

Prior to May 31, 2007, Scott had been informed of a narcotics investigation relating to an IU nurse and assigned to work on it. On June 1, 2007, Scott was told a package relating to the narcotics investigation was available for him to pick up. Scott arrived at the dispatch center and saw the brown paper bag with an incident report attached. Scott picked up the bag to read the report, and he was stuck by a

needle inside the bag. Upon opening the bag, Scott found four or five uncapped needles.

On January 30, 2008, Scott filed his complaint for damages against Retz and IU, alleging Retz's liability for negligence and IU's liability under separate counts of 1) respondeat superior and 2) negligent retention and supervision. Retz and IU both filed motions for summary judgment. Retz argued she owed no duty to Scott and even if she did, her actions did not proximately cause the needle stick. IU argued that even assuming Retz or IU breached a duty to Scott, the negligent failure of Clarian employees to cap or secure the needles was a superseding cause of Scott's injury. In support of its motion for summary judgment, IU designated Wilson's affidavit, stating in part, "[t]hat emergency room physician, whose name I believe was Dr. Rutherford, looked in the bag and stated, as best I can remember, 'Attention everyone! There are sharps in the bag.'" *Id.* at 196.

On December 1, 2008, the trial court held a hearing on Retz's motion for summary judgment, at which IU's motion for summary judgment was also discussed. No separate hearing was held on IU's motion. Scott thereafter filed a motion to strike the above-quoted statement contained in Wilson's affidavit as impermissible hearsay. IU responded to Scott's motion to strike by arguing the statement was not hearsay because it was offered to prove notice to Clarian employees, not the truth of the matter asserted. On January 29, 2009, the trial court issued separate orders granting Scott's motion to strike but also granting summary judgment to Retz and IU. This appeal followed.

*Discussion and Decision*

I. Standard of Review

■ Summary judgment is appropriate only when the designated evidence "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). "A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue." *Scott v. Bodor, Inc.*, 571 N.E.2d 313, 318 (Ind.Ct. App.1991).

We review the grant or denial of a motion for summary judgment de novo. *Univ. of S. Ind. Found. v. Baker*, 843 N.E.2d 528, 531 (Ind.2006). We examine only those materials properly designated by the parties to the trial court. *Trietsch v. Circle Design Group, Inc.*, 868 N.E.2d 812, 817 (Ind.Ct.App.2007). We construe all facts and reasonable inferences in favor of the non-moving party, *Am. Home Assurance Co. v. Allen*, 814 N.E.2d 662, 666 (Ind.Ct.App.2004), *trans. dismissed,* and resolve all doubts as to the existence of a material issue against the moving party, *Tibbs v. Huber, Hunt & Nichols, Inc.*, 668 N.E.2d 248, 249 (Ind.1996). The movant has the initial burden of proving the absence of a genuine issue of material fact as to an outcome-determinative issue and only then must the nonmovant come forward with evidence demonstrating the existence of genuine factual issues that should be resolved at trial. *Jarboe v. Landmark Cmty. Newspapers of Ind., Inc.*, 644 N.E.2d 118, 123 (Ind.1994).

The party appealing the trial court's summary judgment decision has the burden of persuading us the decision was erroneous. *Owens Corning Fiberglass Corp. v. Cobb*, 754 N.E.2d 905, 908 (Ind. 2001). If the trial court's grant of summary judgment can be sustained on any theory or basis in the record, we will affirm. *Beck v. City of Evansville*, 842

N.E.2d 856, 860 (Ind.Ct.App.2006), *trans. denied.* However, we may not reverse the trial court's grant of summary judgment on the ground there is a genuine issue of material fact, "unless the material fact and the evidence relevant thereto shall have been specifically designated to the trial court." T.R. 56(H).

## II. Scott's Claims Against Retz and IU

■ Scott's negligence claim against Retz has three elements: 1) a duty owed by the defendant to the plaintiff, 2) a breach of that duty, and 3) injury to the plaintiff proximately caused by the defendant's breach. *Rhodes v. Wright,* 805 N.E.2d 382, 385 (Ind.2004). Although summary judgment is "rarely appropriate" in negligence cases, *id.* at 387, a defendant is entitled to summary judgment when the undisputed facts negate at least one element of the plaintiff's claim, *id.* at 385. Retz argues she is entitled to summary judgment on both the duty and proximate cause elements of Scott's negligence claim.

■ Scott's claims against IU sound in respondeat superior and negligent retention and supervision. Under the doctrine of respondeat superior, an employer is subject to liability for tortious acts of an employee committed within the scope of employment. *Barnett v. Clark,* 889 N.E.2d 281, 283 (Ind.2008). Therefore, summary judgment to the employee on the underlying tort claim necessarily requires judgment in favor of the employer as to respondeat superior. *Comer–Marquardt v. A–1 Glassworks, LLC,* 806 N.E.2d 883, 887 (Ind.Ct.App.2004).

■ Negligent retention and supervision is a distinct tort from respondeat superior; it may impose liability on an employer when an employee "steps beyond the recognized scope of his [or her] employment to commit a tortious injury upon a third party." *Clark v. Aris, Inc.,* 890 N.E.2d 760, 765 (Ind.Ct.App.2008) (quotation omitted), *trans. denied.* Negligent retention and supervision is a species of negligence and has the following elements: 1) a duty of care owed by an employer to a third person; 2) breach of that duty; and 3) injury to the third person proximately caused by the employer's breach. *Id.* at 763. IU argues it is entitled to summary judgment on the proximate cause element of Scott's negligent retention and supervision claim. We find the proximate cause issue dispositive as to all Scott's claims.

### A. Proximate Causation: General Principles

■ In general, a defendant's act is a proximate cause of an injury if the injury "is the natural and probable consequence of the act and should have been reasonably foreseen and anticipated in light of the circumstances." *Hassan v. Begley,* 836 N.E.2d 303, 307 (Ind.Ct.App.2005). However, under the doctrine of superseding causation, "a chain of causation may be broken if an independent agency intervenes between the defendant's negligence and the resulting injury." *Id.* at 308. "The key to determining whether an intervening agency has broken the original chain of causation is to determine whether, under the circumstances, it was reasonably foreseeable that the agency would intervene in such a way as to cause the resulting injury." *Id.; see also Conder v. Hull Lift Truck, Inc.,* 435 N.E.2d 10, 14 (Ind. 1982) (the action of someone or something other than the alleged tortfeasor that affects the chain of causation is an intervening cause; it becomes a superseding cause breaking the chain of causation if it was not foreseeable). When assessing foreseeability in the context of proximate cause, courts "evaulat[e] the particular circumstances of an incident after the incident occurs." *Goldsberry v. Grubbs,* 672 N.E.2d 475, 479 (Ind.Ct.App.1996), *trans.*

*denied.* Although proximate cause is generally a question of fact to be determined by the jury, it becomes a question of law when the relevant facts are undisputed and lead to only a single inference or conclusion. *Peters v. Forster,* 804 N.E.2d 736, 743 (Ind.2004).

In determining whether an intervening agency is unforeseeable and therefore superseding, this court has looked to various factors. First, we have looked to whether the intervening actor is independent from the original actor, or, in other words, whether the intervening actor is an "independent agency." *Hassan,* 836 N.E.2d at 308; *e.g., Carter v. Indianapolis Power & Light Co.,* 837 N.E.2d 509, 521 (Ind.Ct. App.2005) (motorist's reckless driving was superseding cause of accident, precluding liability for utilities' allegedly negligent placement of utility poles), *trans. denied; Mayfield v. Levy Co.,* 833 N.E.2d 501, 507 (Ind.Ct.App.2005) (steel company employee's actions were superseding cause of injury with respect to any negligence of independent contractor); *Lane v. St. Joseph's Reg'l Med. Ctr.,* 817 N.E.2d 266, 274 (Ind.Ct.App.2004) (emergency room patient's actions were superseding cause of other patient's injuries, precluding liability for medical center); *Straley v. Kimberly,* 687 N.E.2d 360, 365 (Ind.Ct.App.1997) (gas company repair crew that defendants dispatched to accident site was superseding cause of gas explosion), *trans. denied.*

Second, we have looked to whether the instrumentality of harm is under the complete control of the intervening actor. *See, e.g., Hassan,* 836 N.E.2d at 308–09 (nurses' alleged negligence in improperly placing nasogastric tube was superseding cause of patient's death, precluding liability for physician who failed to order or place tube); *Straley,* 687 N.E.2d at 366 (explosion occurred over one hour "after the gas company had assumed complete control over the excavation site," making gas company's negligence a superseding cause); *Woods v. Qual–Craft Indus., Inc.,* 648 N.E.2d 1198, 1201–02 & n. 2 (Ind.Ct. App.1995) (collapse of scaffold, which was exclusively controlled by framing subcontractor, was superseding cause with respect to alleged negligence of concrete subcontractor), *trans, denied; Walker v. Jones,* 511 N.E.2d 507, 510 (Ind.Ct.App. 1987) (motorist who slowed vehicle to observe escaped calf wandering in highway median was superseding cause of rear-end collision with second vehicle, precluding liability for calf's owner).

Third, this court has looked to whether the intervening actor, as opposed to the original actor, is in the better position to prevent the harm. *See, e.g., Carter,* 837 N.E.2d at 520 n. 17 & n. 18 (observing that motorist's reckless driving was not ordinary or normal public use of roadway, and utilities should not be required to guard against every conceivable accident); *Straley,* 687 N.E.2d at 365 (observing that gas company "alone had the experience and expertise to make the necessary repairs"); *cf. Lane,* 817 N.E.2d at 275 (Vaidik, J., dissenting) (concluding emergency room assault was not unforeseeable to medical center because center could have prevented it by placing a security guard).

### B. Retz's Liability

Here, it is undisputed that Clarian acted as an intervening agency between Retz's alleged negligence and Scott's injury. The undisputed facts are that Retz deposited used, uncapped needles in the restroom trash, and subsequently the needles were placed in a brown paper bag and delivered to the Hospital's emergency department operated by Clarian. The parties dispute whether Retz or someone else packaged and delivered the needles to the emergency department, but this dispute is not material to our analysis. It is undis-

puted the bag containing the needles arrived in the emergency department, was given to an emergency room physician, and following that time was in the custody and control of Clarian employees. Higginson, a Clarian nurse, observed the bag, called Clarian safety and security, and delivered the bag to Harris, a Clarian safety and security employee. Both Higginson and Harris were aware the bag contained the needles Retz used to inject herself, and Harris was aware the needles had been left uncapped by Retz.

The bag was then transported to the Clarian safety and security dispatch center, where Scott was telephoned the following day and directed to examine the bag. Only then did Scott come in contact with the bag and suffer injury from an uncapped needle. Based on these facts, this case differs meaningfully from one where someone is injured while retrieving uncapped needles from the restroom trash. Rather, the actions of Clarian employees in transporting the needles intervened between Retz's disposal of the needles in the restroom trash and Scott's exposure to them at the dispatch center.

When applied to the undisputed facts, the superseding cause factors discussed above lead to the further conclusion that Clarian's actions are a superseding cause of Scott's injury, releasing Retz from liability. First, Clarian and its employees were at all times independent from Retz, an IU employee. Retz, who was the subject of Clarian's missing narcotics investigation, could hardly have an expectation of controlling what the Clarian employees did with the used vials, syringes, and uncapped needles once Clarian took custody of the bag. Second, the bag, which was the instrumentality of harm, came under the complete control of Clarian the day before the needle stick and remained in Clarian's exclusive control. Clarian employees were aware of the bag's contents

and did not take precautions to secure the needles, despite having the opportunity to do so. Third, once Clarian took custody and control of the bag, it was Clarian, not Retz, that was in the better position to prevent a needle stick injury. It is undisputed that all Clarian employees had been trained in the proper handling of used needles, including capping them and placing them in labeled sharps containers. If these simple protocols had been followed by Clarian employees, Scott's injury could have been prevented. Therefore, we conclude Clarian and its employees' actions were a superseding cause of Scott's injury, such that Retz's alleged negligence in improperly disposing of the needles was not a proximate cause of Scott's injury. As a result, the trial court properly granted Retz summary judgment.

### C. IU's Liability

■ Similarly, Clarian and its employees' actions were an intervening cause with respect to IU. Scott alleges IU acted negligently in continuing to employ Retz despite knowledge of Retz's drug diversions. The affidavit of Wilson, an IU employee, states she was in the emergency department with Retz when the bag containing the needles was brought in and given to the emergency room physician, and it was her understanding the bag, "which Dr. Rutherford described as having sharps in it," contained the needles and vials Retz used to inject herself. Appellant's App. at 196. Wilson states the emergency room physician "then put the bag to the side in the examination room," and Wilson "left the emergency department a short while after that." *Id.* Viewing this evidence most favorably to Scott supports an inference Wilson was on notice the needles were still uncapped. However, there is no evidence Wilson or any IU employee took custody or control of the bag after it was delivered to the emergency department. The evidence is undisputed that Clarian, not IU, operates the Hospital, and that the

employees in the Hospital's emergency department are employed by Clarian, not IU. Further, as discussed above, it is undisputed that Clarian employees had exclusive custody and control of the bag after it left the emergency department.

In light of these undisputed facts, the actions of Clarian and its employees were a superseding cause with respect to IU, for the same reasons they were superseding with respect to Retz. The designated evidence is undisputed that Clarian is an independent actor from IU. Further, as discussed above, Clarian assumed complete control of the bag a day before Scott's injury occurred, and IU did not exercise any control over the bag during that time. Finally, notwithstanding any ability IU may have had to control Retz's access to and disposal of narcotics and needles in the first place, Clarian, not IU, was in a position to prevent Scott's needle stick injury once Clarian employees took custody and control of the bag and were aware of its contents. For these reasons, we conclude the actions of Clarian and its employees were a superseding cause of Scott's needle stick injury, and IU's alleged negligence in retaining and supervising Retz was not a proximate cause of Scott's injury. Therefore, the trial court properly granted summary judgment to IU.

### Conclusion

Viewing the evidence most favorably to Scott as non-movant, the actions of Retz and IU were not a proximate cause of Scott's injuries. Therefore, the trial court properly granted summary judgment to Retz and IU on all Scott's claims.

Affirmed.

BAILEY, J., and CRONE, J., concur.