**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

**FILED**

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**DANIEL S. CHAMBERLAIN**
Doehrman Chamberlain
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE:
Indiana Trial Lawyer's Association

**DAVID W. STEWART**
**MICHAEL J. SOBIERAY**
Stewart & Stewart
Carmel, Indiana

ATTORNEYS FOR APPELLEE:

**MARK D. GERTH**
**JEFFREY D. HAWKINS**
**MICHAEL WROBLEWSKI**
Kightlinger & Gray, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| A.M.D., a Minor, by his Parents and Guardians, JOHN DOE and JANE DOE, and JOHN DOE and JANE DOE, individually, | ) ) ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1211-CT-551 |
| | ) | |
| YOUNG MEN'S CHRISTIAN ASSOCIATION OF GREATER INDIANAPOLIS, | ) ) ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Heather Welch, Judge
Cause No. 49D12-0805-CT-20350

July 19, 2013

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

A.M.D., a minor, by his parents and guardians, John Doe and Jane Doe, and John Doe and Jane Doe individually, appeal from the trial court's order granting summary judgment in favor of Young Men's Christian Association of Greater Indianapolis and YMCA of Greater Indianapolis (collectively, the YMCA) in an action brought by the Does alleging negligence against the YMCA. The following issue is presented in this appeal: Did the trial court err by granting summary judgment in favor of the YMCA under the doctrine of superseding causation?

We reverse.

The facts designated to the trial court for purposes of ruling on the motion for summary judgment follow. When A.M.D. was eight years old, he participated in a summer day camp through the YMCA's Day Camp Program at Lions Park in Zionsville, Indiana. The camp was offered to children in grades kindergarten through sixth grade. On June 27, 2006, YMCA camp counselors accompanied A.M.D. and the other camp participants to Creekside Park, which is a park immediately adjacent to Lions Park. On that particular day there were fifteen to twenty children, ranging in age from six years old to twelve years old, and three camp counselors at the park.

The purpose of the trip to Creekside Park was to give the children the opportunity to enjoy rafting and playing in and around the water. The camp began that day at 7:00 a.m. and the group walked over to Creekside Park at approximately 2:00 p.m. Until the time of the incident giving rise to this appeal, there was nothing out of the ordinary at the park and there were no activities or individuals that gave anyone at the YMCA cause for concern. In

2

particular, there was no one at the park who was lingering around, looked out of place, or generally looked suspicious.

During the rafting excursion, the counselors were situated such that one counselor, Megan Donaldson, was positioned where the rafting began, and two counselors, Melissa Raab and Jay Binkert, were positioned where the rafting ended. Shortly after the rafting began, A.M.D. told Raab that he needed to go to the bathroom. Since the public restroom was a ten-to-fifteen minute walk away, Raab allowed A.M.D. to urinate by some bushes that were within Raab's direct and unobstructed view. Raab instructed A.M.D. to remain by the bush and to return when he was finished. At the time Raab instructed A.M.D. to urinate in the bushes, she knew that the YMCA's bathroom policy required at least one counselor and one buddy to go with a camper to the restroom. No campers were to go to the bathroom by themselves.

A.M.D. went to the bathroom by the bushes as instructed and was within Raab's line of sight. Raab momentarily turned her attention towards the creek to check on the other children, and turned her attention away from A.M.D. for less than a minute. When Raab looked back to check on A.M.D., he was gone. Unknown to A.M.D. and the YMCA counselors, there was a sexual predator hiding in the woods near where A.M.D. was going to the bathroom. It was later determined that Stephen Taylor was the person hiding in the woods, and who attacked A.M.D. Taylor was so well hidden that A.M.D. did not see Taylor approach him from the front until after he had finished going to the bathroom.

Once Taylor emerged from the woods, he approached A.M.D., told him he was a doctor, and offered to give A.M.D. a piggy-back ride, which A.M.D. accepted. Taylor successfully lured A.M.D. farther into the woods where they were both alone and out of sight from any of the YMCA camp counselors. While hidden in the woods, Taylor sexually assaulted A.M.D. Once Raab noticed that A.M.D. was not by the bushes, she immediately began looking for A.M.D. and screaming his name. Ultimately, A.M.D. was found, but the perpetrator had run away. Approximately six months later, Taylor was arrested on an unrelated charge and was subsequently identified as the person who had sexually assaulted A.M.D. Taylor was convicted of a class A felony and was sentenced to fifty years in the Department of Correction. *See Taylor v. State*, 891 N.E.2d 155 (Ind. Ct. App. 2008), *trans. denied, cert. denied*, 555 U.S. 1142, 129 S.Ct. 1008 (2009), *reh'g denied,* 129 S.Ct. 1665; *Taylor v. State*, No. 06A04-1009-PC-557, 951 N.E.2d 312 (July 29, 2011), *trans. denied*.

Prior to June 27, 2006, the YMCA was not aware of any criminal incidents or crimes that were committed at the Lions or Creekside Parks. Prior to June of 2006, there were no other incidents of violent or sexual assaults reported at Creekside Park. There have been no incidents of violent or sexual assaults reported at Lions Park for at least the past twenty-five years.

On May 7, 2008, the Does individually, and on behalf of A.M.D., filed a negligence action against the YMCA. The YMCA filed a motion for summary judgment in the action presenting the following two claims: 1) The YMCA was not the proximate cause of A.M.D.'s injuries because Taylor's criminal actions were not reasonably foreseeable; and 2)

4

the exculpatory clause contained in the camper application signed by Jane Doe released the YMCA from any and all claims. The Does filed their opposition to the YMCA's motion for summary judgment claiming that the following four theories precluded the entry of summary judgment in the YMCA's favor: 1) The YMCA negligently supervised A.M.D.; 2) the YMCA failed to prevent foreseeable intentional conduct by a third-party; 3) the YMCA did not have to be the sole cause of A.M.D.'s injuries; and 4) the YMCA is not released from its responsibility to A.M.D. and his parents by virtue of the exculpatory clause contained in the camper application form signed by Jane Doe.

On September 17, 2012, the trial court held a hearing on the YMCA's motion for summary judgment. In part, the trial court's order on summary judgment reads as follows:

> The Court hereby finds that the Defendant, YMCA, is entitled to summary judgment as a matter of law and the Court hereby GRANTS the Defendant, YMCA's, Motion for Summary Judgment. The Court hereby DENIES the Plaintiffs' Partial Motion for Summary Judgment regarding the exculpatory clause. The Court further notes that the Defendant never disputed that they had a duty to supervise A.M.D. Thus, the Court does not find this issue was before the Court and the Court declines to address the Plaintiffs[sic] Motion for Partial Summary Judgment on this issue as it is moot due to the Court's ruling on the issue of proximate cause. There is no just reason for delay, and [the YMCA] is entitled to judgment in their favor and against A.M.D., a Minor, by His Parents and Guardians, JOHN DOE AND JANE DOE, and JOHN DOE AND JANE DOE, Individually on the Plaintiffs' Complaint as a matter of law. This Judgment is a full, complete, and final Judgment on the Plaintiffs' Complaint as to [the YMCA] in this case. The Clerk of this Court shall enter the Judgment in the Judgment Docket.

*Appellant's Appendix* at 21. A.M.D. and the Does appeal. Additional facts will be supplied where necessary.

5

A.M.D. and the Does contend that the trial court erred by granting the YMCA's motion for summary judgment and by denying their motion for partial summary judgment on the issue of the impact of the exculpatory clause in the camper application signed by Jane Doe. The trial court included in its summary judgment order specific findings of fact and conclusions of law. A trial court's specific findings and conclusions are not required, and, while they offer insight into the trial court's rationale for the judgment entered, and facilitate our review, we are not limited to reviewing the trial court's reasons for granting or denying summary judgment. *Trustcorp Mortg. Co. v. Metro Mortg. Co., Inc.*, 867 N.E.2d 203 (Ind. Ct. App. 2007). A trial court's order granting summary judgment may be affirmed upon any theory supported by the designated materials. *Id.* Additionally, the fact that the parties filed cross-motions for summary judgment does not alter our standard of review. *Id.* In that situation, we consider each motion separately in order to determine whether the moving party is entitled to judgment as a matter of law. *Id.*

A plaintiff seeking damages for negligence must establish (1) a duty owed to the plaintiff by the defendant, (2) a breach of the duty, and (3) an injury proximately caused by the breach of duty. *Pfenning v. Lineman*, 947 N.E.2d 392 (Ind. 2011). "Absent a duty, there can be no breach, and therefore, no recovery for the plaintiff in negligence." *Vaughn v. Daniels Co. (West Virginia), Inc.*, 841 N.E.2d 1133, 1143 (Ind. 2006). Where the action involves negligent supervision of a child, we have made the following observation:

> [T]here is a well-recognized duty in tort law that persons entrusted with children have a duty to supervise their charges. The duty is to exercise ordinary care on behalf of the child in custody. The duty exists whether or not the supervising party has agreed to watch over the child for some form of

6

compensation. However, the caretaker is not an insurer of the safety of the child and has no duty to foresee and guard against every possible hazard.

*Davis v. LeCuyer*, 849 N.E.2d 750, 757 (Ind. Ct. App. 2006). Our Supreme Court announced the three-part test for determining whether to impose a duty at common law in *Webb v. Jarvis*, 575 N.E.2d 992 (Ind. 1991), *viz.* (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns, but that analysis is not necessary where the duty is well settled. *Northern Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462 (Ind. 2003). Furthermore, the trial court found and the parties do not contest the finding that the YMCA owed a duty to supervise A.M.D.

In this case, the question presented on appeal concerns the issue of causation. We have held that causation is an essential element of a negligence claim. *Bush v. N. Ind. Pub. Serv. Co.*, 685 N.E.2d 174, 178 (Ind. Ct. App. 1997). "The injurious act must be both the proximate cause and the cause in fact of an injury. Generally, causation, and proximate cause in particular, is a question of fact for the jury's determination." *Correll v. Ind. Dep't of Transp.*, 783 N.E.2d 706, 707 (Ind. Ct. App. 2002). In the present case, the trial court entered summary judgment in favor of the YMCA after engaging in an analysis of causation, which we reproduce in pertinent part as follows:

### Summary Judgment Standard

. . . .

11. This Court notes the issue presented by YMCA's Motion for Summary Judgment only addresses the element of causation. The Court does find under well-settled Indiana Law that the YMCA had a duty to supervise A.M.D. However, the issue for this Court is whether there is a material dispute of fact on the element of proximate cause.

7

12. In order to prevail in a negligence action, the plaintiff must demonstrate all the requisite elements of a cause of action: "(1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty by the defendant, and (3) an injury to the plaintiff as a proximate result of the breach." *Ford Motor Co. v Rushford*, 868 N.E.2d 806, 810 (Ind. 2007). The question of whether the defendant owes the plaintiff a legal duty is generally one of law for the court. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind. 1992).

. . . .

17. Causation is an essential element of a negligence claim. *Bush v. Northern Indiana Pub. Serv. Co.*, 685 N.E.2d 174, 178 (Ind. Ct. App. 1997), *trans. denied* (1999). "Proximate cause has two components: causation-in-fact and scope of liability. *City of Gary ex rel. King v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1243-44 (Ind. 2003). To establish factual causation, the plaintiff must show that but for the defendant's allegedly tortious act or omission, the injury at issue would not have occurred. *Id*. The scope of liability doctrine asks whether the injury was a "natural and probable consequence" of the defendant's conduct, which in the light of the circumstances, should have been foreseen or anticipated. *Id*. at 1244. Liability is not imposed on the defendant if the ultimate injury was not "reasonably foreseeable" as a consequence of the act or omission. *Id*. Therefore, the fundamental test of proximate cause is "reasonable foreseeability". *Lutheran Hospital of Indiana, Inc v. Blaser,*634 N.E.2d 864, 871 (Ind. Ct. App. 1994).

18. Generally, causation, and proximate cause in particular, is a question of fact for the jury's determination. *Adams Twp. Of Hamilton County v. Sturdevant*, 570 N.E.2d 87, 90 (Ind. Ct. App. 1991). However, "Where only a single conclusion can be drawn from the set of facts, proximate cause is a question of law for the court to decide.["] *Merchants National Bank v. Simrell's*, 741 N.E.2d 383, 389 (Ind. Ct. App. 2000).

19. In this case, the facts are undisputed and only a single conclusion can be drawn or inferred from the facts. Therefore, the Court finds that the issue of proximate cause is a question of law not fact.

*Appellant's Appendix* at 13-16. The trial court then analyzed cases addressing the issue whether intentional criminal acts of third parties break the chain of causation under the doctrines of superseding and intervening causation.[1]

Our Supreme Court in *Control Techniques* examined whether Indiana's Comparative Fault Act[2] had subsumed or abrogated the doctrines of superseding and intervening causation, and the impact of the viability of those doctrines, such that error could be predicated upon the refusal to instruct the jury thereon. In concluding that no instruction on the doctrine of superseding causation was warranted, the Supreme Court stated as follows:

> For the reasons expressed below, we agree with the Court of Appeals that no separate instruction is required. In capsule form, we conclude that the doctrines of causation and foreseeability impose the same limitations on liability as the "superseding cause" doctrine. Causation limits a negligent actor's liability to foreseeable consequences. A superseding cause is, by definition, one that is not reasonably foreseeable. As a result, the doctrine in today's world adds nothing to the requirement of foreseeability that is not already inherent in the requirement of causation.

---

[1] The Supreme Court described the doctrine as follows:

> The doctrine of superseding or intervening causation has long been part of Indiana common law. It provides that when a negligent act or omission is followed by a subsequent negligent act or omission so remote in time that it breaks the chain of causation, the original wrongdoer is relieved of liability. A subsequent act is "superseding" when the harm resulting from the original negligent act "could not have reasonably been foreseen by the original negligent actor." *Whether the resulting harm is "foreseeable" such that liability may be imposed on the original wrongdoer is a question of fact for a jury.*

*Control Techniques, Inc. v. Johnson*, 762 N.E.2d 104 (Ind. 2002) (internal citations omitted)(emphasis supplied).

[2] Ind. Code Ann. § 34-51-2-1 *et seq.* (West, Westlaw current through June 29 2013, excluding P.L. 205-2013).

*Control Techniques, Inc. v. Johnson*, 762 N.E.2d at 108. The court went on to hold that the adoption of the Comparative Fault Act did not affect the doctrine of superseding cause. *Id*.

The YMCA argues that the trial court correctly found that Taylor's criminal conduct was a superseding or intervening cause of the harm to A.M.D. and cites Restatement (Second) of Torts § 448 in support. The Restatement provides as follows:

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

The YMCA claims that it was not foreseeable that a sexual predator would be lying in wait in the woods in an attempt to sexually molest one of their campers, and in particular, A.M.D.

Restatement (Second) of Torts §449, known as the very duty doctrine, provides as follows: If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby. At the heart of these concepts is the necessity for an analysis of foreseeability.

The YMCA's bathroom procedure for the camp, as set forth in the camp brochures provides as follows:

> No camper is ever alone and no camper is ever alone with a staff member. All campers will take trips to the bathroom with entire camp and/or camp groups and camp staff. Campers will only use bathrooms inspected for safety by camp staff.

*Appellant's Appendix* at 179. Additionally, day campers were to go to the bathroom in pairs, with one counselor present. The YMCA's Code of Conduct for Day Camp Counselors provided as follows with respect to restroom supervision:

> 3. Restroom supervision: Staff will make sure the restroom is not occupied by suspicious or unknown individuals before allowing children to use the facilities. Staff will stand in the doorway while children are using the restroom. This policy allows privacy for the children and protection for the staff (not being alone with a child). If staff are assisting younger children, doors to the facility must remain open. No child, regardless of age, should ever enter a restroom alone on a field trip. Always send children in pairs, and whenever possible, with staff.

*Id.* at 213.

Further, the counselors were instructed that they shall never leave a child unsupervised. In particular, a day camp counselor, the position Raab held with the YMCA at the time of the molestation, has the general function of directly supervising approximately twelve campers and taking responsibility for each child's safety. Several of the major responsibilities of the Camp Site Director involved the protection of the campers, such as personally supervising the campers at all times, being directly responsible for the daily safety and schedule of the campers, and maintaining a clean, neat, and safe campsite.

Raab's deposition testimony indicated her understanding that an eight-year-old child should not be allowed to go to the restroom by himself or wander off because the YMCA did not want the child to get lost, suffer any harm, or be attacked. She further attested to the fact that under the YMCA's rules campers are allowed to use only those bathrooms inspected by

11

staff to make sure there was no one suspicious lurking around or lingering. Another YMCA employee attested as follows:

> Q: What are the bathroom procedures for the YMCA?
> A: For one staff person to accompany two children to the restroom.
> Q: And why do you have that procedure or policy?
> A: To protect children and to protect the staff.
> Q: Protect children from what?
> A: Potential child-on-child abusers or any interaction of any kind that's inappropriate, fighting.
> Q: Well, you would also have that policy and procedure for the one staff and two children to prevent sexual molestation from third parties, correct?
> A: Correct.
> Q: And that's exactly what happened here; Mr. Taylor came upon the scene, found this child and assaulted him?
> A: I can't . . . .

*Id*. at 181.

Other designated evidence before the trial court suggested that until the time of the incident giving rise to this appeal, there was nothing out of the ordinary at the park and there were no activities or individuals that gave anyone at the YMCA cause for concern on the day in question. In particular, there was no one at the park who was lingering around, looked out of place, or generally looked suspicious. Furthermore, prior to June 27, 2006, the YMCA was not aware of any criminal incidents or crimes that were committed at the Lions or Creekside Parks. Additionally, prior to June of 2006, there were no other incidents of violent or sexual assaults reported at Creekside Park. There have been no incidents of violent or sexual assaults reported at Lions Park for at least the past twenty-five years.

We disagree that only one conclusion can be drawn or inferred from the undisputed facts. "[A]n actor need not foresee the exact manner in which harm occurs, but must, in a

12

general way, foresee the injurious consequences of his act." *Rauck v. Hawn*, 564 N.E.2d 334, 339 (Ind. Ct. App. 1990). Furthermore, a determination of whether Taylor's act was a superseding or intervening cause of A.M.D.'s harm such that the original chain of causation has been broken depends on a determination of whether it was reasonably foreseeable under the circumstances that an actor would intervene in such a way as to cause the resulting injury. *Scott v. Retz*, 916 N.E.2d 252 (Ind. Ct. App. 2009).

In order to make that determination, three factors are pertinent to the analysis. First, courts on review have examined whether the intervening actor is independent from the original actor. *Id*. Next, we examine whether the instrumentality of harm was under the complete control of the intervening actor. *Id*. Third, we examine whether the intervening actor as opposed to the original actor is in a better position to prevent the harm. *Id*. At a minimum, the facts pertinent to the third factor are in dispute. Whether the criminal assault on A.M.D. by a stranger, Taylor, was foreseeable by the YMCA such that the chain of causation was broken, should be decided by a trier of fact and not as a matter of law.[3]

Judgment reversed.

ROBB, C.J., and KIRSCH, J., concur.

---

[3] The trial court did not resolve the issue of whether the exculpatory clause in the camper application signed by Jane Doe released YMCA from liability because the issue was moot. We do not address the arguments pertaining to the release of liability because there is no ruling on this issue subject to our review.